Law Offices of Sarah V. Perez
Sarah Vanessa Perez (CA SBN: 274003)
2124 West Beverly Boulevard, Montebello, CA 90640
Email: sarah@svp.law
Telephone: (213) 935-8426

*Attorney for Petitioner*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JESUS MARINO QUINTERO FLORES,<br><br>*Petitioner*,<br><br>v.<br><br>FERETI SEMAIA, Warden of Adelanto ICE Processing Center in his official capacity; ERNESTO SANTACRUZ, Field Office Director of Enforcement and Removal Operations, Los Angeles ICE Field Office, in his official capacity; U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, U.S. Secretary of Homeland Security, in his official capacity; TODD BLANCHE, Acting U.S Attorney General, in his official capacity,<br><br>*Respondents*. | Case No.2:26-CV-09215<br><br>**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241** |

## INTRODUCTION

1. Petitioner, Jesus Marino Quintero Flores, brings this petition for a writ of habeas corpus to seek enforcement of his rights as a member of the Pending Petition Class certified in *Immigration Center for Women and Children v. Noem* ("*ICWC*"), a class action brought on behalf of immigrant victims of domestic violence, trafficking, and other serious crimes. *Immigr. Ctr. for Women & Child. v. Noem*, No. 2:25-CV-09848-AB-AS, 2026 U.S. Dist. LEXIS 114740 (C.D. Cal. May 20, 2026) ("*ICWC* PI Order"). Despite being a member of the certified Pending Petition Class entitled to relief and having a pending U visa petition, Petitioner remains unlawfully detained by Respondent U.S. Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center. This contravenes the *ICWC* PI Order, in which the court certified a nationwide class and issued a ruling staying ICE's 2025 Guidance[1] including its recission of prior policies[2] that required ICE to refrain from pursuing removal against individuals with pending U-Visa applications. *ICWC* PI Order at *122 (recognizing that "[b]y allowing ICE agents to turn a blind eye to persons with pending [U Visa] petitions, the 2025 Guidance undermines the legislative scheme Congress designed to protect such individuals from removal"). As the court order held, the stay of DHS's 2025 Guidance applies "nationwide" and reaches all class members, without a geographical limitation. *Id.* at *154.

2. Petitioner is a survivor of felonious assault. On July 7, 2022, the San Bernardino County District Attorney's Office certified Petitioner's Form I-918, Supplement B, confirming that he was the victim of a qualifying criminal activity and that he was helpful in the investigation and prosecution of the offense. *See* Exhibit B.

---

[1] *See* ICE Policy No. 11005.4, Interim Guidance on Civil Immigration Enforcement Actions Involving Current or Potential Beneficiaries of Victim-Based Immigration Benefits (Jan. 30, 2025) ("2025 Guidance"), https://www.ice.gov/doclib/foia/policy/11005.4.pdf

[2] *See* ICE Directive 11005.3: Using a Victim-Centered Approach with Noncitizen Crime Victims (Dec. 2, 2021) and ICE Policy Statement 10076.1: *Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs* (Jun. 17, 2011).

3. On December 29, 2022, Petitioner applied for a U visa, which Congress made available to noncitizens who have suffered substantial harm as a result of having been a victim of certain crimes and who have been helpful, are being helpful, or are likely to be helpful in the investigation or prosecution of the crime. 8 U.S.C. § 1101(a)(15)(U)(i)(I-IV). His U Visa petition remains pending before U.S. Citizenship and Immigration Services ("USCIS").*See* Exhibit A.

4. Despite having a U visa petition pending before USCIS, immigration authorities arrested Petitioner on July 6, 2026. Petitioner was instructed to appear for a biometrics appointment in connection with his pending Form I-765 application. While he was waiting for his biometrics appointment, however he was detained by ICE agents and taken into custody.

5. As a result of Respondents' actions, Petitioner has suffered significant and ongoing harm, including unlawful detention for over one month; extreme financial and emotional hardship to his United States citizen wife, for whom he is the primary financial provider; and the loss of his daily care, guidance, and support for his four (4) United States citizen children, including three (3) minor children who depend on him for financial and emotional support. His detention has also significantly impacted his family's business, JMQ Construction Inc., which has suffered disruption and financial hardship due to Petitioner's absence and inability to manage, oversee, and contribute to the business's operations Additionally, Petitioner suffers from Type 2 diabetes and requires daily treatment with Metformin twice per day to regulate his blood glucose levels. His continued detention and the need for consistent access to medication and appropriate medical care place his health at unnecessary risk.

6. Accordingly, Petitioner respectfully requests the court issue a writ of habeas corpus and order his release.

## JURISDICTION

7. A writ under 28 U.S.C. § 2241 may issue if, among other things, a person "is in custody under or by color of the authority of the United States," or is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

8. Petitioner is in the physical custody of Respondents under color of the authority of the United States. Petitioner is detained by ICE at the Adelanto ICE Processing Center in Adelanto, California.

9. This Court has jurisdiction under 28 U.S.C. § 2241(c) (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, section 9, clause 2 of the United States Constitution (the Suspension Clause).

10. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

11. Venue is proper in this Central District of California, because it is the judicial district in which Petitioner currently is detained. *See Braden v. 30th Jud. Cir. Ct. of Ky*, 410 U.S. 484, 493-500 (1973).

12. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and/or agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims occurred in this Central District of California.

## PARTIES

13. Petitioner, Jesus Marino Quintero Flores, is a national and citizen of Mexico, who has resided in the United States since June of 2000. Petitioner has a pending appeal before the Board of Immigration Appeal ("BIA") since June 27, 2025, which carries an automatic stay of removal. Petitioner applied for U nonimmigrant

status on December 29, 2022. Despite this pending U visa petition, Respondents continue to unlawfully detain Petitioner.

14. Respondent Fereti Semaia is employed by the GEO Group as Warden of the Adelanto ICE Processing Center, where Petitioner is detained. He is the chief administrative official of the facility and has immediate physical custody of Petitioner. Fereti Semaia is sued in his official capacity.

15. Respondent Ernesto Santacruz is the Director of the Los Angeles Field Office of ICE's Enforcement and Removal Operations Division. As such, Ernesto Santacruz is Petitioner's immediate custodian and is responsible for Petitioner's detention. Ernesto Santacruz is sued in his official capacity.

16. Respondent ICE is a component agency of the Department of Homeland Security ("DHS") and is responsible for the enforcement of immigration laws, including the detention and removal of noncitizens, as well as creating and implementing immigration policies for such enforcement.

17. Respondent Markwayne Mullin is the DHS Secretary. He is responsible for the implementation and enforcement of immigration laws, and he oversees ICE, which is responsible for Petitioner's detention. Mr. Mullin has ultimate custody over Petitioner and is sued in his official capacity.

18. Respondent Todd Blanche is the Acting Attorney General of the United States. He is responsible for the Department of Justice, of which the Executive Office for Immigration Review – which includes the immigration court system – is a component agency. Immigration courts have the authority to review certain custody decisions by ICE and to order release in the cases reviewed. Therefore, Respondent Blanche is a custodian of Petitioner. He is sued in his official capacity.

## FACTUAL ALLEGATIONS

19. Petitioner was born in Mexico and currently resides in California. He has lived continuously in the United States since June 2000 and has his wife and four children here in the United States.

20. Petitioner is married to his United States citizen wife and is the father of four (4) United States citizen children. *See* Exhibit C; Exhibit D; Exhibit E. His children are ages 24, 19, 16, and 14. Three (3) of his children are minors and rely on Petitioner for their financial and emotional support, care, and guidance. Petitioner is the owner and primary operator of JMQ Construction Inc., a family business that provides an important source of income for his household.

21. On November 26, 2016, Petitioner was the victim of felonious assault. Petitioner was confronted by a former disgruntled employee over an alleged debt. During a verbal argument, suspect brandished a machete and struck the Petitioner's left side of his body. Petitioner sustained injuries, including a laceration to his left elbow and redness to the left side of his back.

22. Petitioner immediately reported the crime to San Bernardino County Sherrif's Department and fully cooperated throughout the criminal investigation and prosecution. His cooperation included providing a declaration to law enforcement and testifying at the preliminary hearing against the suspect.

23. On December 29, 2022, Petitioner filed an I-918 Petition for U Nonimmigrant Status, which remains pending with USCIS. *See* Exhibit A. On April 13, 2023, Petitioner completed his biometrics examination as required by USCIS in connection with his U visa petition. As of the date of his detention, Petitioner is awaiting USCIS's decision in respect to deferred action.

24. Petitioner does not have any disqualifying criminal history, and such criminal history was conveyed in Petitioner's U visa petition. Moreover, since the filing of his U vis petition, Petitioner successfully obtained post-conviction relief under California Penal Code §1473.7 (a)(1), and the Court set aside his 1999 conviction. *See* Exhibit I; Exhibit J.

25. USCIS also issued Petitioner an Employment Authorization Document ("EAD") based on his granted Order of Supervision. Petitioner's most recent EAD was valid through August 14, 2025. Prior to the expiration of his EAD, Petitioner

timely filed an application for renewal on April 30, 2025, and was in the process of renewing his employment authorization when he was detained.

26. Petitioner lawfully works as the owner and primary operator of JMQ Construction Inc.

27. On February 18, 2022, ICE exercised its discretion to release Petitioner from custody under the Alternatives to Detention ("ATD") program and granted him parole pursuant to 8 C.F.R. § 212.5(b). *See* Exhibit H. Petitioner was placed in withholding-only proceedings following a positive reasonable fear determination by an Immigration Judge. Petitioner continued to comply with the immigration process and appeared as required for all appointments and proceedings. There has been no indication that Petitioner violated the conditions of his release or attempted to evade immigration authorities. Petitioner has had a pending appeal before the Board of Immigration Appeals ("BIA") since June 27, 2025. *See* Exhibit F; Exhibit G.

28. On July 6, 2026, Petitioner appeared for a scheduled biometrics appointment at USCIS Application Support Center ("ASC") Riverside in connection with his pending Form I-765 application. While awaiting his appointment, ICE agents detained him and took him into custody.

29. After the arrest, immigration agents transported Petitioner to Adelanto ICE Processing Center in Adelanto, California. Petitioner has been detained in ICE custody for [39] days.

30. Petitioner has suffered significant and ongoing harm as a result of his arrest and continued detention. His detention has separated him from his United States citizen wife and four (4) United States citizen children, including three (3) minor children who rely on him for daily care, guidance, financial, and emotional support. As the primary financial provider for his wife and children, Petitioner's detention has caused his family extreme financial hardship and emotional distress. His detention has also significantly disrupted his business, JMQ Construction Inc., due to Petitioner's inability to manage, oversee, and contribute to its operations.

Additionally, Petitioner suffers from Type 2 diabetes and requires Metformin twice daily to regulate his blood glucose levels. His continued detention creates an unnecessary risk to his health by potentially interfering with his consistent access to medication and appropriate medical care.

31. On July 9, 2026, Petitioner, through counsel, requested release based on his pending U visa petition, his status as a member of a certified class entitled to relief pursuant to the *ICWC* PI Order, and the compelling humanitarian factors in his case. On July 29, 2026, ICE denied the request. *See* Exhibit K.

32. Because ICE has detained Petitioner despite his pending U visa petition, which is a clear action to proceed against Petitioner, it is ignoring the *ICWC* PI Order. Under that ruling, the 2025 Guidance remains stayed, thereby, restoring prior ICE policies providing that, absent exceptional circumstances, ICE would refrain from taking civil immigration enforcement action against known beneficiaries of victim-based immigration benefits and individuals known to have pending applications for such benefits. Those policies further provided that, when necessary and appropriate, ICE would coordinate with USCIS to seek expedited adjudication of crime-based immigration petitions.

33. To date, neither Respondents nor USCIS have provided Petitioner any hearing at which they allege that USCIS has issued a negative bona fide determination or waiting-list determination, nor have they provided Petitioner any opportunity to be heard on the issue. There is likewise no indication that ICE has coordinated, or attempted to coordinate, with USCIS to see expedited adjudication of Petitioner's pending U visa petition.

34. Petitioner does not pose a national security concern or an articulable risk of death, violence or physical harm to any person. There is therefore no apparent basis or individualized justification for re-detaining him despite his pending U visa petition, his prior compliance with all conditions of release, and the absence of any national security or public safety concerns.

## LEGAL FRAMEWORK

### A. CREATION OF THE U VISA

35. In 1994, Congress passed the Violence against Women Act ("VAWA") to address the widespread problem of noncitizens remaining in relationships with abusers who held the key to their eligibility for lawful immigration status in the United States. *See* Violent Crime Control and Law Enforcement Act of 1994, Title IV, Pub. L. 103-322, 108 Stat. 1796 (September 13, 1994). "[T]he goal of the bill is to 'permit[ ] battered immigrant women to leave their batterers without fearing deportation.'" *Hernandez v. Ashcroft*, 345 F.3d 824, 841 (9th Cir. 2003) (quoting H.R. Rep. No. 103–395, at 25).

36. In 2000, with overwhelming bipartisan support, Congress passed the Victims of Trafficking and Violence Protection Act of 2000 ("VTVPA"), which reauthorized VAWA through the Violence Against Women Act of 2000 ("VAWA 2000"). The VTVPA dramatically expanded protections for immigrant survivors.

37. Through Title 5 of VAWA 2000 – the Battered Immigrant Women Protection Act of 2000 ("BIWPA") – Congress created the U visa, providing a pathway to U.S. citizenship to noncitizen survivors of qualifying crimes who assist law enforcement in investigating or prosecuting those crimes. *See* BIWPA § 1513(a)(2)(B), (b); 8 U.S.C. § 1101(a)(15)(U).

38. A noncitizen is eligible for a U visa if (1) the petitioner "suffered substantial physical or mental abuse as a result of having been a victim of" certain explicitly identified types of crime; (2) the petitioner "possesses information concerning [the] criminal activity"; (3) the petitioner "has been helpful, is being helpful or is likely to be helpful" to government officials regarding the criminal activity: and (4) the crime occurred in the United States or violated U.S. law. 8 U.S.C. § 1101(a)(15)(U)(i)(I-IV). Children, spouses, and, for petitioners younger than 21, siblings and parents, may also receive U visas as derivative beneficiaries of the primary petitioner. 8 C.F.R. § 214.14(a)(10).

39. Among Congress's stated purposes in creating the U visa were (1) "to strengthen the ability of law enforcement agencies to detect, investigate, and prosecute cases of domestic violence, sexual assault, trafficking of aliens, and other crimes. . . committed against [noncitizens], while offering protection to victims of such offenses in keeping with the humanitarian interests of the United States," and (2) to "facilitate the reporting of crimes to law enforcement officials by trafficked, exploited, victimized, and abused [noncitizens] who are not in lawful immigration status." BIWPA § 1513(a)(2).

40. As DHS has acknowledged, Congress—

> created the U [visa] program out of recognition that victims without legal status may otherwise be reluctant to help in the investigation or prosecution of criminal activity. Immigrants, especially women and children, can be particularly vulnerable to criminal activity like human trafficking, domestic violence, sexual assault, stalking, and other crimes due to a variety of factors, including but not limited to: language barriers, separation from family and friends, lack of understanding U.S. laws, fear of deportation, and cultural differences.[3]

41. Congress went further than simply creating the U visa. Congress additionally authorized DHS to waive virtually *any* ground of inadmissibility to U visa petitioners. *Id.* § 1513(e); 8 U.S.C. § 1182(d)(14).

42. In 2008, Congress passed the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"). Pub. L. No. 110-457, 122 Stat. 5044. The TVPRA added § 237(d) to the Immigration and Nationality Act ("INA"), which authorizes DHS to issue a stay of any removal order against a U or T visa petitioner if the petition "sets forth a prima facie case for approval." 8 U.S.C. §

---

[3] DHS, *U and T Visa Law Enforcement Resource Guide for Federal, State, Local, Tribal and Territorial Law Enforcement, Prosecutors, Judges, and Other Government Agencies*, at 4, available at https://niwaplibrary.wcl.american.edu/wp-content/uploads/DHS-U-and-T-Visa-Law-Enforcement-Resource-Guide-11.30.15.pdf (last checked [8/14/26]).

1227(d)(1). Any such stay remains in effect until the U or T visa is approved or denied, during which time the applicant "shall not be removed." 8 U.S.C. §§ 1227(d)(1)-(3).

43. Moreover, the TVPRA authorized employment for U visa petitioners who had "a pending, bona fide application" awaiting full adjudication. TVPRA § 201(c) (codified at 8 U.S.C. § 1184(p)(6)).

### B. UNTIL 2025, DECADES OF AGENCY POLICY GUIDANCE PRESUMPTIVELY PROTECTED U VISA PETITIONERS FROM IMMIGRATION ENFORCEMENT

44. Consistent with Congress's intent to encourage noncitizen victims to report crime, for nearly two decades, DHS policies have generally required ICE to refrain from pursuing removal efforts against people with pending U visa petitions, like petitioner, absent serious public safety concerns.[4] These include written policies issued in 2011 and 2021. *See* John Morton, ICE Policy Statement 10076.1, *Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs* (Jun. 17, 2011) ("2011 Policy"), available at https://www.ice.gov/doclib/foia/prosecutorial-discretion/certain-victims-witnesses-plaintiffs.pdf (last checked [8/14/26]), and

---

[4] *See* Memorandum from William J. Howard, Principal Legal Advisor, to All OPLA Chief Counsel, *Prosecutorial Discretion* (Oct. 24, 2005), available at https://www.aila.org/library/ice-prosecutorial-discretion-memo; Memorandum from William Howard, Principal Legal Advisor, to All OPLA Chief Counsel, *VAWA 2005 Amendments to the Immigration and Nationality Act and 8 U.S.C. § 1367* (Feb. 1, 2007), available at https://www.ice.gov/doclib/foia/policy/memoVAWA_2005_INA_Amendments_02.01.2007.pdf; Memorandum of David J. Venturella, Acting Director, Detention and Removal Operations, to Field Office Directors, *Guidance: Adjudicating Stay Requests Filed by U Nonimmigrant Status (U-visa) Applicants*, (Sept. 24, 2009), available at https://www.ice.gov/doclib/foia/dro_policy_memos/11005_1-hd-stay_requests_filed_by_u_visa_applicants.pdf; Memorandum from Peter S. Vincent, Principal Legal Advisor, to OPLA Attorneys, *Guidance Regarding U Nonimmigrant Status (U visa) Applicants in Removal Proceedings or with Final Orders of Deportation or Removal* (Sept. 25, 2009), available at https://www.ice.gov/doclib/foia/dro_policy_memos/vincent_memo.pdf; ICE Directive 11005.2, *Stay of Removal Requests and Removal Proceedings Involving U Nonimmigrant Status (U Visa) Petitioners*, (Aug. 2. 2019), available at https://www.ice.gov/doclib/foia/policy/11005.2_StayRemovalReqRemProcUVisaPetitioners.pdf.

ICE Directive 11005.3, *Using a Victim-Centered Approach with Noncitizen Crime Victims* (Dec. 2, 2021) ( "2021 Directive"), available at https://www.ice.gov/doclib/foia/policy/11005.3_UsingVictimCenteredApproachNoncitizenVictims.pdf (last checked [8/14/26]).

45. As with prior DHS policy, the 2011 Policy reiterated that "[a]bsent special circumstances or aggravating factors," it is generally "against ICE policy to initiate removal proceedings against" known victims of crime. 2011 Policy at 1. Notably, the 2011 Policy explains "that a flag now exists in" DHS systems "to identify those victims of domestic violence, trafficking, or other crimes who already have filed for . . .victim-based immigration relief." 2011 Policy at 3.

46. The 2021 Directive continued ICE's longstanding policy to "refrain from taking civil enforcement action against" individuals "known to have a pending application" for "victim-based immigration benefits," "absent exceptional circumstances" such as national security or public safety concerns. 2021 Directive at 1-2, 9. If such an application was pending, ICE was to "defer" enforcement until USCIS adjudicates the petition or issues a negative interim adjudication. *Id.* at 2. Agents were to request expedited prima facie adjudications from USCIS for people in ICE custody, and eligibility "for victim-based immigration benefits . . . must be considered" a "positive discretionary factor." *Id.* at 2, 9.

47. On January 30, 2025, ICE issued a policy directive that, for the first time in the agency's history, authorized the routine detention and removal of noncitizen victims of crime who had petitioned for victim-based immigration benefits, such as the U visa. *See* ICE Policy Number 11005.4, *Interim Guidance on Civil Immigration Enforcement Actions Involving Current or Potential Beneficiaries of Victim-Based Immigration Benefits* (Jan. 30, 2025) ("2025 Guidance"), available at https://www.ice.gov/doclib/foia/policy/11005.4.pdf (last checked [8/14/26]).

48. The 2025 Guidance became "effective immediately and remains in

effect until superseded." 2025 Guidance at 1. It explicitly "rescinded and superseded" the 2021 Directive and 2011 Policy, thereby reneging the government's promise to protect noncitizen crime victims and greenlighting a deportation campaign that ignores their potential eligibility for relief.

49. Specifically, the 2025 Guidance requires, when ICE officers seek to detain or remove individuals with pending U visa petitions, that they (1) merely "coordinate and deconflict internally" and with law enforcement agencies "to ensure criminal investigative and other enforcement actions will not be compromised," (2) "consult with" local ICE attorneys only "to ensure any such action is consistent with applicable legal limitations," (3) need not consider a noncitizen being "a victim of a crime" as "a positive discretionary factor," and (4) will not "routinely request expedited adjudications from USCIS," but may do so only when "it is in ICE's best interests." 2025 Guidance at 2-3.

50. The 2025 Guidance marked an abrupt about-face from longstanding DHS practices, under which immigration agencies generally refrained from enforcement against crime victims absent serious adverse factors.

## C. PETITIONER IS A PENDING PETITION CLASS MEMBER IN *ICWC.*

51. On October 14, 2025, several individual plaintiffs and non-profit legal organizations serving immigrant survivors filed a class action complaint in *ICWC*, challenging the lawfulness of the 2025 Guidance. *See* Compl. ¶¶ 200-233 *Immigr. Ctr. for Women & Child. v. Noem, et al.*, No. 2:25-cv-09848-AB-AS (C.D. Cal. Oct. 14, 2025) [Dkt. 1].

52. On May 20, 2026, the U.S. District Court for the Central District of California granted plaintiffs' Motion for Class Certification and granted in part plaintiffs' Motion for APA § 705 Relief and Individual and Class wide Preliminary Injunction. *ICWC* PI Order.

53. As part of its ruling, the court provisionally certified three classes,

including, as relevant here, the Pending Petition Class,[5] and stayed the 2025 Guidance pursuant to 5 U.S.C. § 705 as to the members of all three Classes. *Id.* at *156 ("Pursuant to 5 U.S.C. § 705, the Court hereby **STAYS** the 2025 Guidance, including its rescission of prior policies. This stay applies in favor of All Individual Plaintiffs, the current and future clients of the Organizational Plaintiffs, and the members of all three Classes").

54. Specifically, the court concluded that plaintiffs were likely to prevail on the merits of their claims that the 2025 Guidance is arbitrary and capricious under the Administrative Procedure Act ("APA") and as contrary to law and in excess of statutory authority. Id. at *102. The Court found that the 2025 Guidance reverses decades of policy without a sufficiently reasoned explanation for disregarding the concerns underlying the prior policy, without adequately considering the reliance interest of individuals who acted in reliance on those policies, and without considering important aspects of the problem. Id. at *113-114. The Court also concluded that the 2025 Guidance is contrary to law because it undermines the protections Congress intended to provide to VAWA self-petitioners and U and T visa petitioners. The 2025 Guidance instead provides that ICE officers and agents are not required to consider a noncitizen's status as a crime victim as a positive discretionary factor and need not request expedited adjudication from USCIS concerning prima facie eligibility unless doing so is in ICE's interest. *See* 2025 Guidance at 2–3. By permitting ICE to disregard individuals with pending victim-based petitions, the 2025 Guidance undermines the statutory scheme Congress enacted to protect such individuals from removal.

55. Here, Petitioner is a member of the Pending Petition Class in *ICWC* because he:

---

[5] The Pending Petition Class is defined as: "All individuals with pending principal or derivative U visa petitions, T visa petitions, or VAWA self-petitions who ICE detains or seeks to detain for civil immigration enforcement." *ICWC* PI Order at *47.

a. is an individual with a pending U visa petition; and

b. who ICE detained for civil immigration enforcement. *Id.* at *155; *see also* n.5 *supra*.

56. Petitioner falls squarely within the Court's definition of the Pending Petition Class. Accordingly, ICE may not apply the stayed 2025 Guidance to Petitioner in a manner that disregards his pending U visa petition or the protections Congress intended for crime victims with such petitions. Therefore, Petitioner's continued detention pursuant to the policies and practices challenged and stayed in *ICWC* is unlawful, and immediate release is warranted.

57. Absent release, Petitioner will continue to experience significant and irreparable harm from his unlawful detention. His detention has separated him from his United States citizen wife and found United States citizen children, including three minor children who rely on him during such a formidable point in their youth, As the primary financial provider for his family, Petitioner's detention has substantially disrupted the operation of his business, and in turn jeopardized his family's financial stability. Moreover, Petition has Type 2 diabetes and requires daily medication, making continued detention an unnecessary risk to his health and wellbeing. These ongoing harms to Petition and his family further warrant his immediate release.

## **CLAIMS FOR RELIEF**

58. The "historic purpose of the writ" of habeas corpus is "to relieve detention by executive authorities without judicial trial." *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) (cleaned up). A habeas court's role is at its "most extensive in cases of pretrial and noncriminal detention," especially "where there ha[s] been little or no previous judicial review of the cause for detention," as is the case here. *Boumediene v. Bush*, 553 U.S. 723, 780 (2008). Here, Petitioner sets for the following claims for issuance of the writ.

## CLAIM ONE

**Violation of APA 5 U.S.C. § 706(2)(A)**

***Petitioner's Detention Is Not in Accordance with Law because It Violates the ICWC PI ORDER***

59. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

60. Under the APA, courts "shall . . . hold unlawful and set aside agency action . . .found to be . . .not in accordance with law." 5 U.S.C. § 706(2)(A).

61. Respondent's detention of Petitioner constitutes final agency action under the APA. 5 U.S.C. § 551(13), 704; *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

62. In *ICWC,* the court concluded that plaintiffs were likely to succeed on their claim that the 2025 Guidance is arbitrary and capricious and not in accordance with law under the APA. *ICWC* PI Order at *102.

63. As a result, the court stayed the 2025 Guidance, under which ICE rescinded and superseded prior policies that directed ICE officers to refrain from immigration enforcement against persons with pending petitions for victim-based benefits and to consider their status as victims of crime as a positive discretionary factor. The 2025 Guidance also ended ICE's routine requests for expedited USCIS adjudication, permitting such requests only on a case-by-case basis when in ICE's best interest. *Id.* at *23.

64. The stay applies in favor to members of all three classes; including the Pending Petition Class, which includes Petitioner. *Id.*

65. Respondents detained Petitioner pursuant to the stayed 2025 Guidance.

66. Accordingly, Respondents' detention of Petitioner is not in accordance with law in violation of the APA, as it directly contravenes the § 705 relief issued in the *ICWC* PI Order.

## CLAIM TWO

**Violation of the Fifth Amendment to the United States Constitution**

***Procedural Due Process Requires Notice and Opportunity to Be Heard before Re-detention***

67. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

68. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The essence of due process is the requirement that a person in jeopardy of serious loss" receive "notice" and "opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333, 348-49 (citations omitted).

69. Here, Petitioner has a protected liberty interest in remaining at liberty in the community absent sufficient justification for his re-detention. Petitioner asserts that due process required process before he was taken into custody.

70. In deciding whether a specific form of conditional release gives rise to a protected liberty interest, courts have compared the form of conditional release at issue with the parolee's liberty interest as described in *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), a seminal case in this area. *Martinez v. Mullin*, 2026 U.S. Dist. LEXIS 163962, *5 (quoting *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted)). In *Morrissey*, the Supreme Court explained that parole, while subject to conditions and restrictions, allows individuals to live at home, work, maintain relationships, and form ordinary attachments, making it fundamentally different from confinement and implicitly promising revocation only for violations of those conditions. Applying these principles in the immigration context, the court in *Martinez* concluded that the petitioner, who had been released on his own

recognizance pending completion of his removal proceedings, had acquired a protected liberty interest in remaining outside of custody. *Martinez v. Mullin*, 2026 U.S. Dist. LEXIS 163962, *6 (2026). The same reasoning applies with particular force here. On February 18, 2022, ICE released Petitioner from custody under the Alternatives to Detention ("ATD") program and granted him parole pursuant to 8 C.F.R. § 212.5(b). Following his release, Petitioner continued to appear as required for all appointments and proceedings, with no indication that he had violated the conditions of his release. Like the individuals in *Morrissey* and *Martinez*, Petitioner was permitted to live in the community subject to conditions rather than remain confined. His parole therefore created a protected liberty interest in remaining at liberty absent sufficient justification and constitutionally adequate process for re-detention.

71. In determining what process is due before ICE would take that protected liberty interest away through its enforcement actions, courts must apply the *Mathews* three-part balancing test, considering (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest . . .that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Here, the *Mathews* balancing test comes out strongly in favor of Petitioner.

72. First, the private interests that will be affected are profound. First, Petitioner's liberty is at stake. There is no question that freedom from government imprisonment is a significant private interest that "lies at the heart of the liberty that" Due Process protects. *Zadvydas*, 533 U.S. at 690.

73. In addition, Petitioner's "private interest in avoiding removal or detention pending removal is great." *ICWC* PI Order at *136. Petitioner has made the United States his home for the past two decade, and his private interest in remaining out of custody has only grown in the 4 years since he was released on

parole. Petitioner has a substantial interest in remaining his home, living with his wife and children, working, and maintaining his relationships within his community.

74. Second, "the risk of an erroneous deprivation of" these interests "through the procedures used" is extremely high, compared to "the probable value" of a pre-deprivation process where Respondents have provided *no process at all* before engaging in an immigration enforcement action that effectively revoked Petitioner's parole. *Mathews*, 424 U.S. at 335.). Where a petitioner has not received any custody hearing or other process in connection with the revocation of his parole, "the risk of an erroneous deprivation [of liberty] is high." *Martinez v. Mullin*, 2026 U.S. Dist. LEXIS 163962, *9 (2026) (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up)). Respondents provided Petitioner no process before undertaking an immigration enforcement action that effectively revoked his parole and resulted in his re-detention. Petitioner poses no risk to national security or public safety. Under these circumstances, a pre-deprivation hearing would have considerable value because it could determine whether any changed circumstance actually justifies continued detention. Indeed, *Martinez* recognized that where the Government seeks to re-arrest a previously released individual, its interest in doing so without a hearing is low while the need for procedural safeguards is substantial. *Id.* at *17–18.

75. Third, "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," are minimal. *Mathews*, 424 U.S. at 335. Respondents cannot identify a substantial administrative burden associated with providing Petitioner a prompt custody hearing before revoking his parole, particularly where the Government already possesses the relevant immigration records and information concerning Petitioner's compliance. Although the Government has a legitimate interest in effectuating final removal orders and ensuring compliance

with immigration laws, the Government also has an interest in avoiding the expenditure of substantial resources on needless detention of individuals who have not been shown to be dangerous or a flight risk. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 32 (1st Cir. 2021). Respondents have identified no changed circumstance demonstrating that Petitioner has since become a danger to the community or a flight risk, nor have they provided him any opportunity to contest such a determination. Moreover, Respondents have identified no exigency or significant administrative burden that would prevent them from providing such process. Nor can the Government's general interest in immigration enforcement justify dispensing with individualized procedures where Petitioner has complied with his immigration obligations and has not been shown to present a danger or flight risk. Accordingly, the Government has no substantial interest in circumventing individualized process by revoking Petitioner's parole and re-detaining him without first establishing a legitimate basis for continued custody.

76. Accordingly, all three Mathews factors favor providing Petitioner with pre-deprivation process before his liberty is taken. Due process therefore requires, at minimum, a prompt custody hearing at which Respondents must establish a legitimate basis for continued detention. Without any procedural protections, Petitioner has been deprived of due process under the Fifth Amendment.

## CLAIM THREE

### *Violation of Fifth Amendment of United States Constitution Detaining Individuals Previously Paroled, Absent Justification Violates Substantive Due Process*

77. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

78. Because "[a]rbitrary civil detention is not a feature of our American government," *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018), civil confinement is only permissible "in certain special and narrow non-punitive circumstances," where a "special justification" asserted by the government

"outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (cleaned up).

79. Immigration detention only comports with due process when it furthers the government's goals of "ensuring the appearance of [noncitizens] at future immigration proceedings and preventing danger to the community." *Id.* (cleaned up). The only two accepted justifications for keeping someone in civil immigration detention are insufficient as applied to Petitioner.

80. "The first justification—preventing flight—is weak or nonexistent where removal seems a remote possibility." *Id.* at 679.

81. Here, deportation is a "remote possibility" as Petitioner has a pending appeal before the Board of Immigration Appeal ("BIA"), which automatically stays his removal. In addition, Petitioner is awaiting USCIS's decision on his request for deferred action and the adjudication of his U visa petition, providing him with every incentive to remain in the United States and comply with the immigration process throughout the adjudication of these matters.

82. Moreover, Petitioner's prior release on parole at least implicitly reflected a determination that he was not a danger or flight risk. *See Noori v. LaRose*, 807 F. Supp. 3d 1146, 1167 (S.D. Cal. 2025) ("In general, '[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."); *Sun v. Santacruz*, No. 5:25-cv-02198-JLS-JC, 2025 U.S. Dist. LEXIS 165913, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted) (a petitioner's initial release from custody, "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk"). Here, Petitioner has not engaged in any acts that would change that determination. "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by . . . alternative conditions." *Hernandez v. Sessions*, 872 F.3d

976, 994 (9th Cir. 2017).

83. Accordingly, because Petitioner's detention is not justified by flight risk or danger concerns, it bears no reasonable relation to a legitimate government purpose, and thus violates Petitioner's substantive due process rights.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Order Respondents to show cause why the writ should not be granted, and set a hearing on this Petition within five days of the return, as required by 28 U.S.C. § 2243;

(3) Issue a writ of habeas corpus and order Respondents to immediately release Petitioner and forbid them from redetaining Petitioner while in valid Pending Petition Class status,

(4) In the alternative, order Respondents to provide Petitioner with a prompt, individualized, and constitutionally adequate custody hearing before a neutral decisionmaker under 8 U.S.C. § 1226(a), to be held within seven (7) days, at which the Government bears the burden of proving, by clear and convincing evidence, that continued detention is necessary to prevent flight or protect the community and that no less restrictive conditions of supervision would reasonably satisfy the Government's legitimate interests.

(5) Declare that Petitioner's detention is unlawful;

(6) Award reasonable costs and attorneys' fees; and

(7) Grant such further relief as the Court deems just and proper.

Dated: 08/18/2026 Respectfully submitted,

Sarah Vanessa Perez, Esq.

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I represent Petitioner, Jesus Marino Quintero Flores , and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 18 day of August, 2026.

________________________

Sarah Vanessa Perez
Attorney Law